1  JUSTIN T. BERGER (SBN 250346)
   jberger@cpmlegal.com
2  SARVENAZ J. FAHIMI (SBN 226148)
   sfahimi@cpmlegal.com
3  **COTCHETT, PITRE & McCARTHY, LLP**
   San Francisco Airport Office Center
4  840 Malcolm Road
   Burlingame, CA 94010
5  Telephone: (650) 697-6000
   Facsimile: (650) 697-0577
6
   *Attorneys for Plaintiff*
7

8

9                 **UNITED STATES DISTRICT COURT**

10              **NORTHERN DISTRICT OF CALIFORNIA**

11 | FOURTH DIMENSION SOFTWARE, a         CASE NO.: 19-CV-05561-CRB
      California corporation,
12                                        **FIRST AMENDED COMPLAINT FOR**
                    Plaintiff,            **BREACH OF LICENSE AGREEMENT**
13
            v.                            _____
14
      DER TOURISTIK DEUTSCHLAND GMBH      **JURY TRIAL DEMANDED**
15    a German corporation,

16                  Defendant.

17

18

19

20

21

22

23

24

25

26

27

28

**FIRST AMENDED COMPLAINT; Case No. 19-CV-05561-CRB**

Plaintiff Fourth Dimension Software ("FDS" or "Plaintiff") brings this action for breach of contract against DER Touristik Deutschland GmbH ("DTDE").

## I.   INTRODUCTION

1.     FDS is a provider of technology solutions to the global tour and packaged travel industry.  FDS delivers a complete leisure travel management and distribution solution for tour operators and sellers of packaged travel.  FDS's travel management and distribution solution enables travel enterprises to take advantage of sophisticated reservations and inventory management of complex travel products, dynamic packaging, call center and online travel distribution, and comprehensive business automation.

2.     FDS developed its technology solutions through significant innovation.  FDS's technology solutions have improved reservation and inventory management in the travel industry.

3.     FDS and Deutsches Reiseburo GmbH ("DER") had been engaged in a decades-long business relationship to develop and provide travel reservation software.

4.     The decades-long business relationship between FDS and DER had been built around a series of contracts in which FDS agreed to license to DER certain software products that FDS had developed from its proprietary technology and trade secrets.  DER, the party that originally contracted with FDS, underwent a first name change in 2013 and became DER Touristik GmbH ("DTG").  In 2018, all of DTG's assets, except for real estate, were transferred to DTDE as part of a conversion and spin-off agreement, including the rights and duties under Plaintiff FDS's licensing agreements, making DTDE the successor in interest and current party to the series of agreements at issue herein.

5.     DTDE[1] breached those contracts by using and distributing the licensed software products in ways that are beyond the terms of the contracts and outside of the scope of the licenses granted in those contracts.

6.     As set forth in more detail below, DTDE has been and is currently in violation of the license agreements entered into between FDS and DTDE.  FDS attempted to work with DTDE to

---

[1] All references to DTDE hereinafter refer to DTDE as the successor in interest of DER, and encompass the obligations, duties and conduct relating to the agreements at issue originally entered into by DER.

1  resolve this dispute without resorting to litigation but was unsuccessful and is initiating this lawsuit to

2  assert its rights under the license agreements, protect its intellectual property, and receive

3  compensation for its innovative and beneficial technologies.

4  **II.     THE PARTIES**

5       7.     Plaintiff Fourth Dimension Software is a California corporation with its principal

6  place of business in San Mateo County, California.

7       8.     Plaintiff is informed and believes, and based thereon alleges, that Defendant DER

8  Touristik Deutschland GmbH ("DTDE") is a German entity with its principal place of business in

9  Koln, Federal Republic of Germany.

10  **III.    JURISDICTION AND VENUE**

11       9.     This Court has subject matter jurisdiction based on diversity of citizenship pursuant to

12  28 U.S.C. § 1332 because Plaintiff is a citizen of the State of California and Defendant is a citizen of

13  the Federal Republic of Germany, where it is incorporated and where its principal place of business is

14  located.  The amount in controversy exceeds $75,000.

15       10.    Defendant is subject to personal jurisdiction of this Court by virtue of conducting

16  systematic and continuous business dealings and transactions in San Mateo County, as successor in

17  interest to the agreements, and by having caused injuries through its acts and omissions as well as its

18  predecessor's acts and omissions within this County.  DTDE's contacts include, without limitation,

19  entering into and participating in a series of contracts, as successor in interest, governed by the laws

20  of the State of California for products made by Plaintiff in San Mateo County, California.  Defendant

21  has sufficient contacts with California or otherwise purposefully availed itself of benefits from

22  California so as to render the exercise of jurisdiction over Defendant by this Court consistent with

23  traditional notions of fair play and substantial justice.  A substantial amount of the events and

24  violations of law complained of herein also occurred in San Mateo County, California.

25       Section 17 of the licensing agreements at issue specifically state that the venue and

26  jurisdiction for any disputes arising from the contracts are to rest in the courts of San Mateo,

27  California under the laws of the State of California.  Further, venue is proper in this District because

28  the contracts were entered into in this District, a substantial part of the acts, omissions, and

1   transactions giving rise to the violations of law complained of herein occurred in this District, and all

2   obligations owed by DTDE to Plaintiff under the contracts at issue were to be deemed performable in

3   the county of San Mateo under the same clause.

4   **IV.     SUBSTANTIVE ALLEGATIONS**

5           11.     FDS and DTDE's predecessor, DER, entered into three separate written license

6   agreements on or about July 15, 1994 (collectively referred to herein as the "License Agreements")

7   whereby DTDE licensed several related software products from FDS.  Under the three License

8   Agreements, DTDE licensed three of FDS's products: SafePath, Easy Path, and EasyClient

9   (collectively, the "Tools").

10          12.     SafePath is security and navigational software for database software systems.

11          13.     EasyPath is a computer application for the Tandem application development platform.

12  EasyPath automates computer program creation through macros and other features and, as a result,

13  substantially increases programmer productivity.

14          14.     EasyClient is a visual client development tool and system to create and manage a MS-

15  Windows front end (client) to the applicable Tandem software application (back-end).

16          15.     FDS developed software development and management tools and other products, like

17  travel reservation systems, which leveraged these Tools, for Tandem servers.  FDS used these Tools

18  to develop other products and licensed these Tools to its customers, in connection with the use of

19  other software products.

20          16.     One of the products FDS developed that leveraged these Tools is Phoenix.  Phoenix is

21  a tour operator automation system that FDS developed for DER.  As the License Agreements were

22  being finalized, FDS and DTDE's predecessor were negotiating a software development agreement,

23  pursuant to which FDS would develop the Phoenix travel reservation system for DTDE.  That

24  agreement was concluded in October 1994, at which time FDS started development.  FDS completed

25  the project to develop the Phoenix system at the end of 1996.

26          17.     Like other FDS clients, DTDE's predecessor, DER, used these Tools to enable it to

27  use other FDS products (like Phoenix) securely and to easily navigate these other applications (*i.e.*

28  SafePath), to efficiently modify and update Phoenix or other FDS products (*i.e.* EasyPath), and to

develop and use in production MS-Windows interfaces to Phoenix or other FDS products (*i.e.* EasyClient).

18.     These Tools are essential to use of related FDS products, like Phoenix.

19.     Pursuant to the licensing agreements SafePath and EasyPath each were licensed on a per system basis.

20.     EasyClient was licensed on a per workstation (user) basis.  The license for EasyClient included both EasyClient Designer (a developer tool) and EasyClient Run-Time (used for actual production execution).

21.     DER licensed two (2) SafePath systems, one (1) EasyPath system, four (4) EasyClient Designer workstations, and three hundred (300) EasyClient Run-Time users.  The License Agreements expressly provide that "Monthly license/maintenance fees are 1.5% of the current published list price."  Consistent with the License Agreements, FDS charged a one-time license fee and a monthly maintenance and support fee, equal to 1.5% of the one-time fee.

22.     The License Agreements permitted DER, and subsequently DTDE, internal use only of the Tools, with no sublicense rights.  Section 7 of the License Agreements expressly prohibits using the licensed software to provide data processing services to third parties, providing as follows:

> "Licensee is authorized to use Licensed Software for its own systems purposes on the specified single CS only, except that, for Licensee's use, a successor CS from the same manufacturer may be substituted, provided that use of the Licensed Software on the original CS is terminated and Licensor is immediately notified in writing of the model and serial number of the successor CS.  Licensor understands and agrees that use of the Licensed Software for the purpose of providing data processing services for any other person or entity, or its transfer to any other person is strictly prohibited.  Licensee agrees not to use the Licensed Software until all charges and fees as set forth above and due Licensor have been paid in full."

23.     Similarly, Section 17 prohibits transfer of DER's license rights, providing that "Licensee may not assign or otherwise transfer this Agreement or the License without the express written consent of Licensor, which shall not be unreasonably withheld."  Section 17 also provides that a prevailing party is entitled to reasonable attorney's fees and costs.

24.     DER acknowledged the License Agreements in a separate Supplementary Agreement, dated December 12, 1997 (the "Supplementary Agreement"), which provided that "FDS previously

licensed its proprietary software products, called Easy Path, Easy Client, and Safe Path to DER (collectively, 'FDS Software') under separate license agreements for use with the Phoenix Reservation System, a travel software package developed by FDS for DER." The purpose of the Supplementary Agreement was to provide for the escrow of the SafePath, EasyPath, and EasyClient products.

25. In the License Agreements and the Supplementary Agreement, DER acknowledged and confirmed that the licensed software constitutes the valuable properties and trade secrets of FDS embodying substantial creative efforts and confidential information, ideas, and expressions.

26. DER, and/or subsequently DTDE, hired a number of former FDS employees who were involved in and familiar with the development, marketing, and sales of FDS's licensed software and proprietary materials. These former FDS employees included key technical personnel, including FDS's Chief Technology Officer, who had knowledge of FDS's source code to the licensed software and of other FDS proprietary materials.

27. Under terms of the License Agreements, DER, and successor DTDE, agreed not to assign, sublicense, or otherwise transfer the licensed software or any part thereof, directly or indirectly, and in no event was the license to be assigned or assignable.

28. As of September 2017, FDS has learned that DTDE, as successor in interest of DER, has been and is currently in violation of the License Agreements because DTDE has used the licensed software to provide data processing services to a third party, AOVO. For years, DER/DTDE has charged AOVO for access to Phoenix, operating a service bureau for the benefit of AOVO and perhaps other customers as well. AOVO's use of Phoenix necessarily means that AOVO was impermissibly using FDS's software Tools that are essential to use Phoenix.

29. While DER had every right to license Phoenix to third parties based upon its ownership rights in Phoenix, it had no right to license or provide access to FDS's proprietary software Tools to third parties. The License Agreements entered into between FDS and DER and its successor DTDE do not grant DTDE the right to sublicense or otherwise provide FDS's proprietary software tools developed from FDS's trade secrets to a third party, particularly one that was not bound by the strict confidentiality provisions of the License Agreements.

30.     Accordingly, FDS is owed the license fees that would have been charged by FDS for AOVO's use of FDS's software Tools licensed only to DTDE.

31.     In addition to the software tools impermissibly sublicensed to AOVO, DER, now DTDE, has exceeded the licensed quantities of systems or workstations for SafePath, EasyPath, and EasyClient.  Upon information and belief, DTDE has exceeded the quantities of SafePath and EasyPath systems and EasyClient workstations permitted under the License Agreements by many orders of magnitude.

32.     FDS demands payment for the use of its software and Tools that Defendant impermissibly granted to AOVO and that otherwise exceeded DER, and its successor DTDE's, licensed quantities of systems and workstations for SafePath, EasyPath, and EasyClient.

**V.      CAUSES OF ACTION**

<u>FIRST CAUSE OF ACTION</u>
<u>BREACH OF CONTRACT</u>

33.     FDS hereby realleges and incorporates the prior allegations above as though fully set forth herein.

34.     FDS and DER entered into the License Agreements as described in detail above. DTDE is the successor in interest of DER.

35.     The License Agreements were and are valid and enforceable contracts supported by adequate, mutual consideration.

36.     The License Agreements provide clear and concise obligations and limitations regarding the use and distribution of FDS's software products.

37.     FDS has performed each and every one of its material duties and obligations under the License Agreements, or has been excused from performing as a result of Defendant's breach, and all conditions to Defendant's performance have occurred.

38.     By impermissibly sublicensing FDS's software tools to AOVO in violation of the License Agreements and by exceeding the number of systems and workstations of SafePath, EasyPath, and EasyClient licensed under the License Agreements, DTDE has materially breached the terms of the License Agreements.

39.     Defendant's willful breach of the License Agreements has damaged FDS, entitling FDS to damages and reasonable legal fees and costs.  FDS has been damaged by the breaches of contract in the form of lost profits through AOVO's failure to purchase authorized software products from FDS and damages through a loss of royalties as a result of Defendant's transfer of unauthorized copies of FDS's software to AOVO.  FDS has been damaged by Defendant's breach of the License Agreements in an amount to be determined at trial.

## VI.     PRAYER FOR RELIEF

WHEREFORE, Plaintiff Fourth Dimension Software prays for relief and judgment against Defendant as follows:

A.     For consequential and compensatory damages for breach of contract in an amount according to proof;

B.     For an order from the Court requiring that Defendant provide complete accountings and for equitable relief, including that Defendant disgorge and return or pay their ill-gotten gains obtained from the illegal transactions entered into and/or pay restitution, including the amount of monies that should have been paid if Defendant had complied with its legal obligations, or as equity requires;

C.     For an order from the Court that an asset freeze or constructive trust be imposed over all monies and profits in Defendant's possession which rightfully belong to FDS;

D.     For damages in an amount to be proven at trial for unjust enrichment;

E.     For an award of attorneys' fees and costs incurred herein; and

F.     For any and all other legal and equitable relief as may be available under law and that the Court may deem proper.

Dated:  October 20, 2020                    **COTCHETT, PITRE & McCARTHY, LLP**


By:   */s/ Sarvenaz J. Fahimi*
        JUSTIN T. BERGER
        SARVENAZ J. FAHIMI

        *Attorneys for Plaintiff*

## VII.   JURY TRIAL DEMAND

Plaintiff Fourth Dimension Software respectfully demands a trial by jury for all of the claims asserted in this Complaint so triable.

Dated:  October 20, 2020                    **COTCHETT, PITRE & McCARTHY, LLP**


By:   */s/ Sarvenaz J. Fahimi*
　　　　　JUSTIN T. BERGER
　　　　　SARVENAZ J. FAHIMI

*Attorneys for Plaintiff*