UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FOURTH DIMENSION SOFTWARE,<br><br>    Plaintiff,<br><br>    v.<br><br>DER TOURISTIK DEUTSCHLAND GMBH,<br><br>    Defendant. | Case No. 19-cv-05561-CRB  (AGT)<br><br>**DISCOVERY ORDER REGARDING PRIVILEGE DISPUTE**<br><br>Re: Dkt. No. 61 |

The parties have a discovery dispute about whether plaintiff Fourth Dimension Software ("FDS") has properly withheld a September 28, 2016 email from its former in-house counsel, John Pavolotsky, to its President and CEO, Ilya Pavolotsky (who is also John's father), on attorney-client privilege grounds. Dkt. 61. That email contains the subject line "Re: AOVO" and was sent the day before Ilya met with third-party company, Aovo Touristik, in Germany to discuss Aovo's potential licensing of FDS's software tools. Defendant Der Touristik Deutschland GMBh contends FDS has not shown that the email is subject to attorney-client privilege, and even if a privilege applied, FDS waived it when Ilya forwarded the email to a hotel front desk at "info.berlin@hilton.com," with the subject line "Please print one copy. I'm waiting at the front desk. Thanks." *Id.*, Ex. A. As discussed below, the Court finds that the privilege applied but FDS waived it.

    **1. Attorney-Client Privilege**

California law governs this attorney-client privilege dispute. Fed. R. Evid. 501; *In re California Pub. Utilities Comm'n*, 892 F.2d 778, 781 (9th Cir. 1989) ("In diversity actions, questions of privilege are controlled by state law."). In California, clients hold a privilege "to refuse to disclose, and to prevent another from disclosing, a confidential communication between

client and lawyer . . . ." Cal. Evid. Code § 954. "Client" is defined as "a person who, directly *or through an authorized representative*, consults a lawyer for the purpose of . . . securing legal service or advice from him in his professional capacity." *Id.* § 951 (emphasis added). "Confidential communication" between client and lawyer is defined to mean:

> information transmitted between a client and his or her lawyer in the course of that relationship and in confidence by a means which, so far as the client is aware, discloses the information to no third persons other than those who are present to further the interest of the client in the consultation or those to whom disclosure is reasonably necessary for the transmission of the information or the accomplishment of the purpose for which the lawyer is consulted, and includes a legal opinion formed and the advice given by the lawyer in the course of that relationship.

*Id.* § 952.

Corporations, like natural persons, are "entitled to the full benefit of the attorney-client privilege." *Ins. Co. of N. Am. v. Superior Ct.*, ("*INS*"), 108 Cal. App. 3d 758, 763 (1980); *see Costco Wholesale Corp. v. Superior Ct.*, 47 Cal. 4th 725, 733 (2009) ("[I]t is settled that a corporate client . . . can claim the privilege."). In general, "the power to assert and waive the attorney-client privilege held by a corporation belongs to corporate management and is normally exercised by the corporation's officers and directors." *Melendrez v. Superior Ct.*, 215 Cal. App. 4th 1343, 1353–54 (2013).

"The party claiming the privilege has the burden of establishing the preliminary facts necessary to support its exercise, i.e., a communication made in the course of an attorney-client relationship. Once that party establishes facts necessary to support a prima facie claim of privilege, the communication is presumed to have been made in confidence and the opponent of the claim of privilege has the burden of proof to establish the communication was not confidential or that the privilege does not for other reasons apply." *Costco*, 47 Cal. 4th at 733 (internal citations omitted). To assess whether a communication is privileged, "the focus of the inquiry is the dominant purpose of the relationship between the parties to the communication." *Clark v. Superior Ct.*, 196 Cal. App. 4th 37, 51 (2011). "Under that approach, when the party claiming the privilege shows the dominant purpose of the relationship between the parties to the

communication was one of attorney-client, the communication is protected by the privilege." *Id.*[1]

In this case, FDS has shown that the dominant purpose of the relationship between FDS (acting through its President and CEO, Ilya[2]) and its former in-house counsel (John) was attorney-client at the time of the "Re: AOVO" email. The fact that John "had already left FDS and was employed in-house at Intel" in September 2016 does not, as Der Touristik suggests, automatically preclude any further attorney-client relationship between John and FDS. Dkt. 61 at 2. Rather, "[a]n attorney-client relationship exists for purposes of the privilege whenever a person consults an attorney for the purpose of obtaining the attorney's legal service or advice." *Kerner v. Superior Ct.*, 206 Cal. App. 4th 84, 116–17 (2012). As FDS explains, John served as its in-house counsel for years and "was integral to advising FDS on all legal matters, including regarding the licensing agreements of FDS products." Dkt. 61 at 4. FDS asserts that following John's tenure as the company's in-house counsel, and specifically in September 2016, it "continue[d] to seek [John's] legal advice relating to [licensing agreements of FDS products]" because "he had been intricately

---

[1] After reviewing the parties' joint letter, the Court directed FDS to submit the disputed email in unredacted form for *in camera* review. *See* Dkt. 62. In federal proceedings, requiring "*in camera* review is an acceptable means to determine whether disputed materials fit within the [attorney-client] privilege" upon a "relatively minimal" factual showing. *In re Grand Jury Investigation*, 974 F.2d 1068, 1074 (9th Cir. 1992). In contrast, California "Evidence Code section 915 prohibits a court from ordering in camera review of information claimed to be privileged in order to rule on the claim of privilege." *Costco*, 47 Cal. 4th at 739. Neither party cited or discussed section 915 in the joint letter; instead, FDS relied exclusively on *In re Grand Jury Investigation*, 974 F.2d at 1074–75, to oppose Der Touristik's request for *in camera* review. *See* Dkt. 61 at 5. As another court in this District observed, "[i]t is not clear that Section 915, which is a procedural rule, applies to federal courts," *Shenzhenshi Haitiecheng Sci. & Tech. Co. v. Rearden LLC*, 2017 WL 8948739, at *7 n.8 (N.D. Cal. Nov. 15, 2017), and the Ninth Circuit has yet to address the issue. However, most district courts to identify and consider section 915 have concluded that section 915 does govern in a diversity action. *See Laub v. Horbaczewski*, 2019 WL 1744846, at *5–6 (C.D. Cal. Feb. 8, 2019) (reviewing split among district courts regarding section 915's application in federal diversity proceedings and agreeing with the majority that the statute "is a rule of substance that is intertwined with the core of privilege under California law"). This Court is also inclined to agree that section 915 applies in diversity cases, and therefore has not considered or relied on any information acquired from its *in camera* review in ruling on the instant dispute.

[2] FDS, as a corporation, "can only receive communications from its attorney by means of human agency officers, agents, and employees of the corporation [authorized] to act on its behalf." *INS*, 108 Cal. App. 3d at 763. Der Touristik does not dispute that Ilya, as a corporate officer of FDS, was authorized to act, and was acting, on FDS's behalf at the time in question. *See Nat'l Football League Properties, Inc. v. Superior Ct.*, 65 Cal. App. 4th 100, 111 (1998) ("[A] corporation president may be authorized to obtain legal advice for the corporation as the corporation's authorized representative").

3

involved with [that subject area] for years." *Id*. FDS further asserts that the September 28, 2016 "Re: AOVO" email from John to Ilya, sent the day before Ilya met with Aovo executives to discuss a licensing agreement for FDS software tools, occurred in the course of the attorney-client relationship. *Id*. These representations support a finding that the dominant purpose of FDS's relationship with John at that time was to obtain his legal advice regarding FDS product licensing.

While Der Touristik speculates that "the email may contain business, not legal, advice" because "in-house counsel are often integral players in business decisions," *id.* at 2, that unsupported belief is of no consequence under California's dominant purpose test, where "the relevant inquiry is not the *content* of the communication but is instead the *relationship* of the communicators." *Clark*, 196 Cal. App. 4th at 52; *see also DP Pham, LLC v. Cheadle*, 246 Cal. App. 4th 653, 664 (2016) (noting that when the attorney-client privilege attaches, it "bars discovery of the entire communication, including unprivileged material"). Der Touristik's factually unsupported contention that John's familial relationship to Ilya "cast[s] doubt on whether he was aiding in 'business decisions' or providing legal advice," Dkt. 61 at 2, is likewise unpersuasive. The Court finds that FDS has made a sufficient showing that the dominant purpose of the relationship was attorney-client at the time in question.

### 2. Waiver by Disclosure

Der Touristik argues that even if the privilege applied, FDS waived it when Ilya forwarded John's email the morning of the FDS-Aovo meeting in Germany to a hotel front desk at info.berlin@hilton.com with the subject line "Please print one copy. I'm waiting at the front desk. Thanks." According to Der Touristik, the hotel desk was an unnecessary third party whose involvement destroyed any privilege that may have existed. The Court agrees.

California Evidence Code section 912(a) provides that waiver of the attorney-client privilege occurs "if any holder of the privilege, without coercion, has disclosed a significant part of the communication or has consented to disclosure made by anyone." Section 912(d) contains an exception to waiver: "A disclosure in confidence of a communication that is protected by [attorney-client privilege], when disclosure is reasonably necessary for the accomplishment of the purpose for which the lawyer . . . was consulted, is not a waiver of the privilege." Section 952

4

similarly acknowledges that confidential attorney-client communications remain privileged when disclosed to third persons "who are present to further the interest of the client in the consultation," or "to whom disclosure is reasonably necessary for the transmission of the information or the accomplishment of the purpose for which the lawyer is consulted." *See INS*, 108 Cal. App. 3d at 765 (construing section 952 to mean that attorney-client communications "disclosed to[] clerks, secretaries, interpreters, physicians, spouses, parents, business associates, or joint clients, when made to further the interest of the client or when reasonably necessary for transmission or accomplishment of the purpose of the consultation, remain privileged").[3] "While involvement of an *unnecessary* third person in attorney-client communications destroys confidentiality, involvement of third persons to whom disclosure is reasonably *necessary* to further the purpose of the legal consultation preserves confidentiality of communication." *Zurich Am. Ins. Co. v. Superior Ct.*, 155 Cal. App. 4th 1485, 1503 (2007) (quoting *INS*, 108 Cal. App. 3d at 765).

As an exception to waiver by disclosure, FDS must demonstrate that Ilya's disclosure to the hotel front desk was reasonably necessary. *See Behunin v. Superior Ct.*, 9 Cal. App. 5th 833, 845 (2017) (explaining that "involvement of a third party changes the burden of proof in litigating attorney-client privilege issues"; where a privileged communication was disclosed to a third party, "no presumption of confidentiality obtains, and the [] proponent of the privilege [has the burden of proving that] confidentiality was preserved under § 952"); *In re Pac. Fertility Ctr. Litig.*, 2020 WL 1934981, at *1 (N.D. Cal. Apr. 22, 2020); *see also OXY Res. California LLC v. Superior Ct.*, 115 Cal. App. 4th 874, 891 (2004) ("If a disclosing party does not have a reasonable expectation that a third party will preserve the confidentiality of the information, then any applicable privileges are waived. An expectation of confidentiality, however, is not enough to avoid waiver. In addition, disclosure of the information must be reasonably necessary for the accomplishment of the purpose for which the lawyer was consulted.").

FDS's position appears to be that forwarding a privileged attorney-client email to a hotel

---

[3] Der Touristik and FDS both rely on section 952 to make their respective arguments regarding waiver. The analysis of whether disclosure was "reasonably necessary" within the meaning of sections 952 and 912(d) "is the same regardless of [which statute] one relies on." *McKesson HBOC, Inc. v. Superior Ct.*, 115 Cal. App. 4th 1229, 1236 n.5 (2004).

front desk for printing purposes is "reasonably necessary for the transmission of the information" as contemplated by section 952. Yet FDS fails to explain why, under the circumstances of this case, Ilya's disclosure to a general email address (info.berlin@hilton.com) for printing was necessary at all to transmit the information, especially considering Ilya was already in possession of John's email. *See INS*, 108 Cal. App. 3d at 765 ("If the client discloses attorney-client communications to unnecessary third parties, he manifests an intent to waive confidentiality."). Likewise, there is no indication that Ilya intended for John's email to remain confidential once forwarded to info.berlin@hilton.com, a generic email address that any number of hotel staff presumably had access to. On the contrary, the forwarded email contains no confidentiality warnings or other language alerting the hotel desk recipient(s) not to read or share its contents and to delete it after printing, and it is unclear whether Ilya was even a guest at the hotel. *See* Dkt. 61, Ex. A. The facts here do not show that Ilya intended or reasonably expected confidentiality, and "it is well settled that a communication is not protected by the attorney-client privilege . . . unless the client intends that it be treated in confidence." *D. I. Chadbourne, Inc. v. Superior Ct. of City & Cty. of San Francisco*, 60 Cal. 2d 723, 732 (1964).

FDS also relies on California Evidence Code section 917(b), which provides that a privileged communication "does not lose its privileged character for the sole reason that it is communicated by electronic means or because persons involved in the delivery, facilitation, or storage of electronic communication may have access to the content of the communication." Dkt. 61 at 4. That statute does not help FDS here. As Der Touristik notes, the hotel front desk was not "involved in the delivery, facilitation, or storage of electronic communication" as contemplated by section 917(b). *Id.* at 3 (citing *Holmes v. Petrovich Dev. Co., LLC*, 191 Cal. App. 4th 1047, 1068 (2011)). Rather, as discussed, the hotel desk was an unnecessary third party to whom Ilya knowingly disclosed the attorney-client email without any stated indication that the communication would remain private. Section 917(b) does not apply in such circumstances. *See Holmes*, 191 Cal. App. 4th at 1068 (explaining that had the client emailed her attorney "us[ing] her home computer to which some unknown persons involved in the delivery, facilitation, or storage may have access[,] that would have been a privileged communication [protected by section

917(b)] *unless [she] allowed others to have access to her e-mails and disclosed their content*") (emphasis added).

In sum, the Court finds that Ilya's disclosure of John's email to info.berlin@hilton.com is not protected under either section 952 or section 917(b), and thus constitutes a waiver of the privilege.

\* \* \*

FDS must produce the disputed email to Der Touristik by **September 29, 2021**. Any party may object to this nondispositive order within 14 days. Fed. R. Civ. P. 72(a).

**IT IS SO ORDERED.**

Dated: September 14, 2021

ALEX G. TSE
United States Magistrate Judge